# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT FORTINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17 C 5037 |
| | ) |
| THE VILLAGE OF WOODRIDGE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Fortino was employed by the Village of Woodridge Police Department from 2009 until 2016. He has filed suit against the Village, alleging discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) (count 1), violations of the Family and Medical Leave Act (FMLA) (count 2), and retaliatory discharge in violation of Illinois public policy (count 3). The Village has moved to dismiss counts 1 and 3. For the reasons stated below, the Court denies the motion to dismiss.

### Background

The Court takes the following facts from the allegations in Fortino's second amended complaint. Fortino began working as a patrol officer for the Woodridge Police Department in May 2009. In January 2015, while exiting his patrol car to check on another vehicle parked off the roadway during an ice storm, Fortino slipped on a patch of ice and tore his left meniscus. Fortino notified the Police Department of his injury, and a workers' compensation claim was filed and processed on his behalf. In February

2015, Fortino underwent surgery to repair his torn meniscus.  Prior to Fortino's surgery, Deputy Chief Tom Stefanson informed him that he would not be considered for the field training officer (FTO) position for which he had applied in October 2014, because the Village had decided to offer the position to "more experienced" officers.  2d Am. Compl. ¶ 10.  Fortino later learned that at least one officer with less experience than he had been offered an FTO position.

In April 2015, after his workers' compensation case manager requested, and Fortino obtained, a doctor's release, Fortino returned to full-duty work as a patrol officer.  Unfortunately, in May 2015, when Fortino was responding to a situation on a school bus, an unruly student kicked him in the same knee.  Fortino experienced a marked increase in knee pain after this incident.  In November 2015, his treating physician recommended that he participate in physical therapy, but workers' compensation did not authorize further treatment.  Fortino alleges that, in December 2015, the Police Department retaliated against him for seeking additional treatment for his knee by unfairly suspending him for an alleged departmental reports violation.

In January 2016, Fortino's treating physician requested that he be removed from active duty to participate in physical therapy.  The Police Department accommodated Fortino by giving him a light duty assignment assisting the evidence custodian and updating records at headquarters.  In February 2016, Fortino's physical therapist sent him back to his treating physician because the physical therapy had not been successful.  Around the same time, an independent medical examiner concluded that Fortino was able to work full duty.  After receiving the independent medical examiner's report, the Police Chief at the time, Gina Grady, suggested to Fortino that his light duty

assignment would not be honored beyond March 10, 2016 because he had been released for full duty. Nonetheless, Fortino continued to work light duty until April 2016, when he underwent another knee surgery. Fortino applied for leave under the FMLA, and he did not work from the date of his second surgery until about June 6, 2016, at which time he returned to light duty. Near the end of July, Fortino began a work hardening / conditioning program, but the physical therapist terminated the program a week early because he was not improving.

On August 22, 2016, after undergoing a Functional Capacity Evaluation ordered by his treating physician, Fortino called Deputy Chief Stefanson and told him that he was in too much pain to return to the office. Deputy Chief Stefanson suggested that Fortino's light duty assignment was being "re-evaluated." *Id.* ¶ 29. On August 24, 2016, Fortino met with his treating physician, who opined that Fortino had reached "maximum medical improvement" and that he was "currently unable to perform the duties of a police officer." *Id.* ¶ 30. Fortino then sent an e-mail to Chief Grady, Deputy Chief Stefanson, and the Village human resources department formally requesting accommodation. No one responded. Fortino alleges that the Police Department had open positions at that time and that it could have created a position for him, as it had done for others in the past, but no one ever discussed possible reassignment with him.

In early September 2016, Chief Grady sent Fortino a letter ordering him to "immediately cease performing any police function or identifying [himself] as [a] police officer on behalf of the Village of Woodridge or the Woodridge Police Department" and another letter requesting further information from Fortino's physician on the ground that "it is not clear what accommodations are being requested and for how long the

3

accommodations may need to be in place." *Id.* ¶ 33. One of the letters stated that Fortino's "time off under the FMLA ran out during the last pay period." *Id.* ¶ 34. The letters did not inform Fortino that he might qualify for a disability pension or other long-term disability income; instead, the only option presented was to request a leave of absence without pay. Fortino later learned from his union that he could apply for disability pension, which he did. In October 2016, after Fortino filed for a disability pension, he received a "pre-termination letter" from Interim Chief Keith Grabarek, which stated that "the medical consensus is that you are permanently incapable of performing the essential functions of a Village Police Officer, with or without reasonable accommodation." *Id.* ¶ 37. The union attorney responded to the letter on Fortino's behalf and suggested that it was improper to terminate him while he had a pending workers' compensation claim as well as a disability application pending before the pension board. Nonetheless, on November 29, 2016, new Police Chief Brian Cunningham terminated Fortino's employment, effective immediately.

Fortino alleges that he "remained, and continues to remain, qualified to perform the duties of many positions to which he could have been reassigned, and . . . which may have been open or could have been made open, during the relevant time." *Id.* ¶ 45. He contends that the Police Department "routinely" offers pregnant and injured officers light duty assignments "for lengthy periods of time." *Id.* ¶ 19. He also contends that Department has effectively created new positions for other officers who have suffered injuries. By way of example, Fortino alleges that the Department gave Ken Ostarello, an officer with an off-duty injury, a specialty assignment that did not require him to perform patrol duties. When that assignment drew to a close, the Department

4

"ended a different specialty assignment, changed the title of the position, and offered it to Ostarello," which Fortino says "amounts to the creation of a position." Id. ¶ 20.

Fortino filed a charge of discrimination based on sex, disability, and retaliation with the Equal Employment Opportunity Commission (EEOC) on February 24, 2017, and he received a notice of right to sue from the EEOC in April 2017. He filed this suit against the Village of Woodridge in July 2017. In count 1, Fortino claims that the Village discriminated against him by failing to accommodate his disability and retaliated against him for seeking accommodations in violation of the ADA. In count 2, which is not at issue in the present motion to dismiss, Fortino claims violations of the FMLA. Lastly, he claims in count 3 that he was discharged in retaliation for exercising his rights under the Workers' Compensation Act, in contravention of Illinois public policy.

**Discussion**

The Village has moved to dismiss counts 1 and 3 of Fortino's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). The Village first argues that Fortino's ADA failure-to-accommodate claim should be dismissed because he has alleged facts that establish he is not a qualified individual with a disability. Next, it contends that Fortino's failure-to-accommodate claim fails for the additional reason that all the possible accommodations he identifies are unreasonable as a matter of law. The Village further argues that Fortino's ADA retaliation claim fails as a matter of law because he has not alleged that he opposed unlawful conduct under the ADA and suffered an adverse employment action as a result.[1] Lastly, it contends that count 3

---

[1] Although the Village initially argued that Fortino failed to exhaust his administrative remedies with respect to his ADA retaliation claim, it has since withdrawn that argument.

5

(retaliatory discharge) fails to state a claim because Fortino admits that he was terminated after his doctor certified that he was unable to work as a patrol officer due to his disability, and Illinois law does not require an employer to retain an employee who is unable to work due to a disability.

To survive a motion to dismiss under Rule 12(b)(6), a claim must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) . "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss, the Court accepts all facts alleged in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

**A.    ADA claims (count 1)**

    **1.    Discrimination/failure to accommodate**

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA, unless the employer can demonstrate that accommodation would impose an "undue hardship."  *Id.* § 12112(b)(5)(A); *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018).  To state a claim for failure to accommodate, a plaintiff must allege that (1) she is a qualified individual with a disability, (2) her employer was aware of the disability, and (3) her employer failed to reasonably accommodate the disability.  *Preddie v. Bartholomew*

*Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

As an initial matter, the Village argues that any claims based on Fortino's December 2015 suspension are time-barred because they occurred more than 300 days before he filed with EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1). Fortino responds that he is not basing his claims on the 2015 suspension or seeking damages related to the suspension. Instead, he intends to use the suspension as evidence in support of his timely claims. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court explained that an employee may use prior acts "as background evidence in support of a timely claim" even if the acts themselves do not provide an independent basis for liability because they are time-barred. Because they are based on events that post-date the 2015 suspension, there is no basis for dismissing Fortino's claims as time-barred. *See also West v. Ortho-McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005) (time-barred acts may be used to support a timely race discrimination claim).

The Village further contends that Fortino has pled himself out of court by alleging facts that establish that he is not a qualified individual with a disability within the meaning of the ADA. Specifically, the Village argues that Fortino is not a qualified individual because he applied for (and was granted) a disability pension based on his inability to work as a police officer and because he expressly states in the second amended complaint that he is unable to perform the duties of a patrol officer as a result of his disability.

A "qualified individual" is defined in the ADA as "an individual who, *with or without reasonable accommodation*, can perform the essential functions of the

7

employment position that such individual holds or desires." *Id.* § 12111(8) (emphasis added). Reasonable accommodations may include job restructuring or "reassignment to a vacant position." *Id.* § 12111(9)(B); *see also EEOC v. United Airlines, Inc.*, 693 F.3d 760, 761 (7th Cir. 2012) ("[T]he ADA does indeed mandate that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer."); *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 677 (7th Cir. 1998) ("It is well established that under the ADA, the employer's duty reasonably to accommodate a disabled employee includes reassignment of the employee to a vacant position for which she is qualified.").

There is no dispute that Fortino is unable to perform the essential functions of the patrol officer position as a result of his knee disability. Fortino admits in the second amended complaint that his own physician has opined that he has reached "maximum medical improvement" and that he is "unable to perform the duties of a police officer." 2d Am. Compl. ¶ 30. But that is not the end of the matter, because the ADA includes within its definition of a "qualified individual" those who can perform the essential functions of their position with reasonable accommodation. 42 U.S.C. § 12111(8). Fortino alleges that he was—and still is—"qualified to perform the duties of many positions to which he could have been reassigned, and upon information and belief, which may have been open or could have been made open, during the relevant time." *Id.* ¶ 45. He contends that the Police Department could have reasonably accommodated him by reassigning him to any one of those non-patrol duty positions. *Id.* ¶ 49. He also alleges that he was and is qualified to perform the essential functions

of an "inactive status" position. *Id.* ¶ 45. The Court therefore concludes that Fortino has sufficiently alleged that he is a "qualified individual" within the meaning of the ADA.

The Village next argues that the accommodations Fortino has identified, to include reassignment to a vacant position or to "inactive status," are not reasonable as a matter of law.

As previously explained, "the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015) (citation omitted). The Seventh Circuit has noted, however, that "there are significant limitations on an employer's potential obligation to reassign a disabled employee as reasonable accommodation." *Id.* (citation omitted). The obligation to reassign an employee extends only to vacant positions for which the employee is qualified; an employer is not required to create a new position or change the essential functions of a job to accommodate a disabled employee, nor is it obligated to "bump" another employee from a position to create a vacancy. *Id.*; *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).

Fortino has alleged that the Police Department could have reasonably accommodated him by reassigning him to an open non-patrol duty position or placing him on "inactive duty" status. *Id.* ¶¶ 32, 45, 49, 51. While it may turn out to be the case that reassignment to another position would not have constituted a reasonable accommodation under the circumstances, there is no factual record from which such a

9

determination may be made at this time.  *See Smith v. Sheriff*, No. 15 CV 4737, 2016 WL 492344, at *3 (N.D. Ill. Feb. 9, 2016).  Accepting as true Fortino's allegation that there were open positions for which he was qualified and to which he could have been reassigned, he has adequately alleged failure to accommodate under the ADA.  The Court therefore denies the Village's motion to dismiss the failure-to-accommodate claim in count 1.

### 2. Retaliation

The ADA's retaliation provision prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful" by the Act.  42 U.S.C. § 12203(a).  To state a claim for retaliation under the ADA, a plaintiff must allege that "she engaged in protected activity, that she suffered an adverse action, and that there is a causal connection between the two."  *Rodrigo*, 879 F.3d at 243 (7th Cir. 2018).  The Seventh Circuit treats seeking accommodation under the ADA as a protected activity.  *See id.*; *Preddie*, 799 F.3d at 814.

Fortino alleges that the Village retaliated against him in violation of the ADA not only by taking away his light-duty assignments, but also by initiating the termination process shortly after he applied for a disability pension that would change his duty status to "inactive."  2d Am. Compl. ¶ 36.  The Village argues that Fortino has failed to state a claim for retaliation under the ADA because he has not alleged that he opposed conduct made unlawful by the Act prior to receiving the October 2016 pre-termination letter from Interim Chief Grabarek.  Specifically, the Village contends that the only instance in which Fortino could be said to have opposed conduct unlawful under the ADA took place <u>after</u> the alleged incidents of retaliation, when the union attorney replied

to the pre-termination letter in writing, suggesting that it would be improper to terminate Fortino while he had pending workers' compensation and disability pension claims.

The Village overlooks the fact that Fortino also alleges that he sent an e-mail to Chief Grady, Deputy Chief Stefanson, and the Village human resources department "formally requesting accommodation based on his existing restrictions" after his treating physician opined on August 24, 2016 that he had reached maximum improvement and remained unable to perform the duties of a police officer. *Id.* ¶¶ 30-31. He appears to have made that request for accommodation shortly before he received the September letters ordering him to immediately cease police work. This request for accommodation also would have predated the October 2016 pre-termination letter. Because seeking accommodation for a disability is a protected activity, the Court finds that Fortino has stated a claim for retaliation under the ADA.

**B.     Retaliatory discharge claim (count 3)**

To state a claim for retaliatory discharge under Illinois law, Fortino must allege that he has been (1) discharged (2) in retaliation for his activities and (3) that the discharge "violates a clear mandate of public policy." *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160, 601 N.E.2d 720, 728 (1992). Illinois courts have held that terminating an employee in retaliation for filing a workers' compensation claim is contrary to public policy as expressed in the Illinois Workers' Compensation Act. *See, e.g.*, *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 182, 384 N.E.2d 353, 357 (1978).

Fortino alleges that he was discharged in retaliation for exercising the rights afforded to him by the Workers' Compensation Act. The Village argues that Fortino has admitted that he was terminated only after his own physician certified that he was

11

unable to work as a police officer due to his disability. Because Illinois law does not require an employer to retain an employee who is unable to work due to a disability, the Village argues that Fortino's retaliatory discharge claim fails as a matter of law. *See Wright v. St. John's Hosp. of Hosp. Sisters of Third Order of St. Francis*, 229 Ill. App. 3d 680, 688, 593 N.E.2d 1070, 1075 (1992). The Village also argues that Fortino has failed to allege sufficient facts to state a plausible claim of retaliatory discharge because he was terminated nearly two years after he filed his first workers' compensation claim and does not allege that anyone from the Village raised the issue during the termination process.

"The mere existence of a valid or sufficient reason [for termination] . . . does not defeat a retaliatory discharge claim"; the employer may still be liable if the actual motivation for termination was the employee's pursuit of her rights under the Workers' Compensation Act. *Siekierka v. United Steel Deck, Inc.*, 373 Ill. App. 3d 214, 222, 868 N.E.2d 374, 380-81 (2007). Illinois courts have found that "the 'issue of an employer's true motive in terminating an employee is a question of fact'" that typically cannot be resolved on the pleadings. *Cardenas v. First Midwest Bank*, 114 F. Supp. 3d 585, 591 (N.D. Ill. 2015) (quoting *Zuccolo v. Hannah Marine Corp.*, 387 Ill. App. 3d 561, 568, 900 N.E.2d 353, 359 (2008)). Moreover, the mere passage of time between a protected act and an adverse employment action does not preclude the possibility of a retaliatory motive. *Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014).

In this case, in addition to alleging that his ultimate termination was retaliatory, Fortino also has alleged that he experienced a number of other retaliatory employment actions before that. For example, Fortino alleges that the Department rejected his

12

application for an FTO position shortly after he injured his knee and filed a workers' compensation claim. 2d Am. Compl. ¶ 10. He also asserts that the Village retaliated against him for seeking authorization for additional treatment for his knee by "unfairly disciplining him" for a departmental reports violation in December 2015. *Id.* ¶ 15. Although these incidents do not, in and of themselves, form the basis for a valid retaliatory discharge claim, they may serve as evidence of an underlying retaliatory motive. *Cf. Arce v. Chicago Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *6 (N.D. Ill. June 2, 2015) (even though plaintiff may not recover for acts that occurred prior to a certain date, they are not necessarily irrelevant because they may serve as "background evidence in support of a timely claim") (quoting *Morgan*, 536 U.S. at 113). The Court finds that Fortino has alleged a plausible claim for retaliatory discharge.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss [dkt. no. 27].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 7, 2018